UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
JAMES K. BREDAR
UNITED STATES MAGISTRATE JUDGE

MDD_JKBChambers@mdd.uscourts.gov

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0950 OFFICE
(410) 962-2985 FAX

July 9, 2009

Howard Benjamin Hoffman, Esquire
Howard B. Hoffman, Attorney at Law
600 Jefferson Plaza, Suite 304
Rockville, Maryland 20852

Gary Gilkey, Esquire
Baltimore City Law Department
100 North Holliday Street
Baltimore, Maryland 21202

Subject: *Samuel Bowden v. Karen Stakem-Hornig, et al.*
Civil Case No. MJG-08-1572

Dear Counsel:

This matter was referred to me for resolution of discovery and related matters. In response to a letter of complaint from Plaintiff's counsel, Howard B. Hoffman, Esquire (Paper No. 24), I entered a Memorandum and Order directing the preparation of a transcript and video recording of the deposition of Ms. Stakem-Hornig on May 29, 2009, and submission to the undersigned on or before June 11, 2009, for review regarding the conduct of counsel (Paper No. 27). The purpose of the review was to determine whether improper conduct occurred and, if so, what response the Court should make.

On June 9, the City of Baltimore's Law Department submitted the transcript and video recording to my Chambers. The same day, Mr. Hoffman filed a letter requesting leave to withdraw his letter. (Paper No. 30.) Additional correspondence was received from both Mr. Hoffman and the City on June 10. (Paper Nos. 32 & 34.) On June 11, the presiding judge, the Honorable Marvin J. Garbis, entered an order of dismissal pursuant to the Court's Local Rule 111 upon notification from the parties that they had reached a settlement. (Paper No. 35.) Because my involvement at this point relates to attorney discipline and not to resolution of the underlying case, I have retained jurisdiction for completion of the task at hand, i.e., to review the deposition and to determine whether the conduct of counsel warrants referral to the Court's Disciplinary Committee.

Having reviewed both the transcript and video recording, I find that the conduct of Michael Elder, Esquire, Special Chief Solicitor of the Baltimore City Law Department, reflected appropriate standards of professional conduct. However, I find that the conduct of Mr. Hoffman fell below the Court's expectations of conduct for attorneys admitted to its bar. In particular, Mr. Hoffman's statement, "What a nut job" (Depo. Karen Stakem-Hornig, 5/29/2009, 140:1) constitutes an unacceptable epithet. Mr. Hoffman has filed an additional letter with the Court to say that he "was

frankly exasperated" and that Mr. Elder did not hear the remark. (Paper No. 34.) Neither explanation merits condonation. Additional conduct that troubles the undersigned is Mr. Hoffman's accusations that Mr. Elder was staring at him. The video recording camera only focused on where the deponent sat, so I am unable to judge whether this occurred. In the transcript, Mr. Hoffman brings up this issue twice:

> MR. HOFFMAN: All right, let's bring Ms. Hornig back in and continues [sic] the deposition.
>
> MR. ELDER: Good.
>
> MR. HOFFMAN: I don't think you have to stare at me, I really don't.
>
> MR. ELDER: Mr. Hoffman, you're talking to me. When people talk to me, I look at them.
>
> MR. HOFFMAN: I got a police officer sitting right next to me. I'm actually not talking to you.
>
> MR. ELDER: You were just talking to me for about four minutes, and if you want to talk about who's staring at whom, I observe Mr. Bowden staring at Mr. [sic] Hornig, Ms. Hornig for a protracted period of time. So, let's put that on the record if you want to talk about staring. You're staring at me right now.
>
> MR. HOFFMAN: You're talking at me right now. I'm listening to you. What a nut job.

(Depo. Stakem-Hornig at 139:4–140:1.) The second instance occurred as follows:

> MR. ELDER: Objection, the document speaks for itself. You can answer the question.
>
> MR. HOFFMAN: Documents don't speak for themselves; witnesses speak.
>
> MR. ELDER: Why are you laughing? What's so funny?
>
> MR. HOFFMAN: Because you're trying to stare me down, and I don't understand where this anger comes from you unless it's coming from something else.
>
> MR. ELDER: Mr. Hoffman, I'm not angry with you. It's not my practice to get angry in the context of all practice. Life is too short. I'm looking at you because you are asking my client questions. It helps me listen. If you have a problem with that, I'm sorry. That's the reason I continue to look in your direction. I also happen to be seated directly facing you. That is another reason I continue to look at you.

>MR. HOFFMAN:  I don't want to invite – I don't want to accept your invitation for a response, but I don't agree with what you just said.
>
>MR. ELDER:  That's fine.

(*Id.* at 222:9–223:10.)

The undersigned's impression of these exchanges is that Mr. Hoffman unnecessarily sought to provoke a reaction from Mr. Elder and that Mr. Hoffman's issue with Mr. Elder's purported staring is not worthy of mature discussion.  The same impression as to Mr. Hoffman's unnecessary provocation is drawn from other exchanges involving Mr. Elder's instructions to the deponent not to answer.  At one point, after Mr. Elder had objected to the form of a question and asked to have the question read back, Mr. Hoffman tried repeatedly to have the deponent answer without having the question read back.  After much back-and-forth dialogue, Mr. Elder finally instructed Ms. Stakem-Hornig not to answer until the question was read back.  Mr. Hoffman then said to Ms. Stakem-Hornig,

>MR. HOFFMAN:  Are you going to follow your lawyer's advice obstructing this deposition?
>
>MR. ELDER:  Don't answer that.  Don't respond to that.
>
>MR. HOFFMAN:  Even if it means coming back for another deposition?
>
>MR. ELDER:  Don't respond to that.
>
>MR. HOFFMAN:  Even if it means I'm going to bring this matter to Judge Bernard [sic] at the earliest opportunity?
>
>MR. ELDER:  Could you read the question back, please?
>
>(The record was read as requested.)

(*Id.* at 80:1–81:13.)

Another instance involved topics discussed at meetings where a Baltimore City Police Department General Order was formulated.  Mr. Elder objected based upon privilege and instructed Ms. Stakem-Hornig not to answer.  (*Id.* at 112:13–114:11.)  The following then occurred:

>Q.  Are you going to follow your counsel's advice and not answer?
>
>A.  Yes, sir.
>
>MR. ELDER:   For the record, it's not advice.  It's an instruction.

> Q. Well, for the record, are you going to follow your counsel's instruction?
>
> A. Yes, sir.
>
> Q. Even if it means that we come back another time?
>
> A. Yes, sir.
>
> Q. Even if it means that you are personally sanctioned?
>
> MR. ELDER: Objection, this is harassment.
>
> MR. HOFFMAN: I'm sorry, your answer?
>
> MR. ELDER: You are badgering the witness. This is harassment.
>
> A. I think I've answered your question.
> MR. HOFFMAN: I'm not badgering the witness and I'm not harassing the witness.
>
> Q. I'm asking simply are you going to follow this instruction to its end?
>
> A. And I've answered, yes, I am.

(*Id.* at 114:17–115:18.)

Mr. Hoffman's conduct in the foregoing instances displayed a lack of courtesy not only to opposing counsel but also toward the deponent. Repeatedly asking the same question, however it is couched, when it has been already answered and threatening the deponent with sanctions if she follows her counsel's instructions are simply not justifiable.

Although Mr. Hoffman has complained to the Court that he has had to work hard to maintain civility "even in the face of constant attacks and baiting from City lawyers over the course of several years" (Paper No. 34, ¶4), the undersigned can only observe that the record now before the Court shows a lack of civility toward and engagement in baiting of opposing counsel by Mr. Hoffman, not the other way around. His behavior comes close to justifying a referral to the Court's Disciplinary Committee. Mr. Hoffman is cautioned that the Court may not overlook similar behavior in the future, and he is further cautioned to comport himself as a professional.

Mr. Hoffman's request for leave to withdraw his request for the Court's review of Ms. Stakem-Hornig's deposition (Paper No. 30) is DENIED. The Court declines to refer this matter to the Disciplinary Committee.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as

an Order.

                                                            Very truly yours,

                                                                    /s/

                                                           James K. Bredar
                                                          United States Magistrate Judge

JKB/cw
cc:  The Honorable Marvin P. Garbis
      Court file
      Chambers file